UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANTHONY VISCOMI,

                        Petitioner,

            -vs-

JAMES CONWAY, Acting Superintendent,
Attica Correctional Facility,

                        Respondent.
_____

**DECISION AND ORDER**
No. 03-CV-0187

## I.    Introduction

Petitioner, Anthony Viscomi ("Viscomi"), filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in New York State Supreme Court (Erie County) following a guilty plea to charges of second degree murder, attempted first degree robbery, and fourth degree criminal possession of a weapon. The parties have consented to disposition of this matter by the undersigned pursuant to 28 U.S.C. § 636(c).

## II.    Factual Background and Procedural History

Viscomi's conviction stems from his involvement, with co-defendants Eudaldo Blanco ("Blanco") and Holly Harris ("Harris"), in the attempted robbery and beating death of Jason Trefethen ("Trefethen") on February 4, 1998, in the City of Buffalo. After receiving information from Blanco regarding Viscomi's and Harris's whereabouts, the police proceeded to bring Viscomi, Harris, and several of their acquaintances in for questioning on the night of February 6, 1998. When the police read Viscomi his *Miranda* warnings, Viscomi became "visibly upset" and stated, "I don't need a lawyer present, I know I'm guilty, this has been troubling [me] since I heard it on the news, I'm willing to take responsibility for my actions." *See* Police Report dated

February 6, 1998, submitted by Respondent as part of the State Court Records. Viscomi then

waived his rights and gave a statement to the police which was memorialized on a written form

that had the *Miranda* warnings pre-printed on it. In the statement, Viscomi explained that he

"decided [he] was going to rob somebody" because he needed money to pay his rent and buy

some food. *See* Petitioner's Statement to Police dated February 6, 1998, submitted by

Respondent as part of the State Court Records. Viscomi stated that he had Harris call Hoagan's

Pizzeria and have some sandwiches delivered to an address on Sterling Avenue. *Id.* at 1. Then,

he and "T-Bone" (Blanco) waited for the pizza delivery person behind the building. *Id.* When the

victim arrived, Viscomi "walked behind him and punched him in the back of the head with [his]

fist" causing him to fall on top of T-Bone. *Id.* The victim then got up and started to chase

Viscomi; Viscomi "went to run and that's when T-Bone hit him, with his fist," causing the

victim to fall to the ground. *Id.* Viscomi stated that T-Bone him in the head with a board;

Viscomi hit him two more times with his fist. *Id.* at 1-2.  According to Viscomi, T-Bone "kept

hitting him in the head with the wood." *Id.* at 2. Viscomi stated that he "got scare[d] cause [*sic*] it

went to [*sic*] far" and so he ran home. *Id.* Viscomi admitted that it was his plan to rob the pizza

delivery man, and that just he and T-Bone were present when they planned the robbery. *Id.*

Viscomi said that he had brought a table leg with him as a weapon, which he hid up his sleeve.[1]

---

[1] There are several anomalies to Viscomi's written statement. First, when he was asked, "Have any promises or threats been made to you concerning this statement?" the typed response is "Yes." Then, when Viscomi finished giving his written statement, he signed it and then proceeded to make several handwritten changes. Viscomi had been asked, "Are you giving this statement of your own free will?" He originally answered, "Yes." He changed this response to "No," and initialed it. However, to the question "Having your rights in mind, are you still willing to proceed with your statement?", Viscomi did not change his affirmative response. Nor did he change his affirmative response to the question, "Did you acknowledge your understanding of each of your rights, by placing your, [*sic*] signature, time and date, on both sides of the rights card?" Finally, Viscomi did not change his affirmative answers to the questions, "Do you understand each of these rights I have explained to you?" or "Having these rights in mind, do you wish to talk to us now?" *See* Petitioner's Statement to Police dated February 6, 1998. In this Court's view, these aspects of the statement likely would not have formed the basis of a successful motion to suppress.

*Id.*

Viscomi was charged with two counts of second degree murder (N.Y. Penal Law §§ 125.25(2) (depraved indifference murder), 125.25(3) (felony murder)); two counts of attempted first degree robbery (N.Y. Penal Law §§ 110.100 (attempt); 160.15(1) (robbery while causing serious physical injury); 160.15(3) (robbery while using or threatening use of a dangerous instrument)); and one count of fourth degree criminal possession of a weapon (N.Y. Penal Law § 265.01(2)).  In return for his guilty plea to all counts of the indictment, Viscomi received a sentence promise of fifteen years to life. Had he been convicted as charged following a trial, Viscomi faced a minimum sentence of twenty-five years to life.

The plea allocution was taken in Erie County Court (Wolfgang, J.) on May 14, 1998. After confirming that Viscomi understood all of the rights he was giving up by entering a guilty plea and foregoing trial, and that no one had coerced him or threatened him in connection with the decision to plead guilty, the court engaged Viscomi in the following colloquy:

| | |
|---|---|
| The Court: | Now, I can't accept your plea unless you're guilty. So, regarding these incidents on – this incident on February 4th, 1998, were you with Edualdo [*sic*] Blanco? |
| The Defendant: | Yes, ma'am. |
| The Court: | And did you rob a person named Jason Trefethen? |
| The Defendant: | Yes, I did. |
| The Court: | Where did this occur? |
| The Defendant: | Occurred on Starin [*sic*] Avenue in Buffalo, New York. |
| The Court: | And during the course of this robbery, did you beat him? |
| The Defendant: | He was beaten. |
| The Court: | And what was he beaten with? |
| The Defendant: | Two by four. |
| The Court: | And who was involved in this, you and Edualdo [*sic*] Blanco? |
| The Defendant: | Yes. |

-3-

| The Court: | And what part of his body was injured? |
| The Defendant: | His head. |
| The Court: | Where was he hit? |
| The Defendant: | His head. |
| The Court: | And did he die as a result of this? |
| The Defendant: | Yes, he did. |
| The Court: | And when did this occur[,] day or night? |
| The Defendant: | In the night. |
| The Court: | Regarding those counts of murder in the second degree, how do you plead to the first count of this indictment – |
| The Defendant: | Guilty. |
| The Court: | – Murder in the second degree, how do you plead to that count of the indictment? |
| The Defendant: | Guilty. |

P.6-7.[2] Viscomi then pleaded guilty to the remaining counts of the indictment.

Prior to the sentencing hearing, Viscomi submitted a written motion to withdraw his plea on the grounds that he was "not guilty" and that he "want[ed] to prove [his] innocence." *See* Exhibit A to Respondent's Appendix of Exhibits. That was the extent of the allegations in his motion; Viscomi provided no factual basis or legal basis for withdrawing his plea.

At the sentencing hearing, the trial court noted that there was "before the court a notice of motion to withdraw the plea and I need to ask [defense counsel] what the status of this motion is at this time." S.3.[3]  Defense counsel replied that he was "aware of the letters that Mr. Viscomi sent to the Court. I met with him a few days after the date of that letter, and explained what I thought the understanding was at the time of the plea. I explained to him that I don't see anything improper regarding consent or willfulness at the time he took the plea. And at this point, I don't really know what Mr. Viscomi plans on doing. I believe it's up to him." S.3.

---

[2] Citations to "P.___" refer to the transcript of the plea hearing.

[3] Citations to "S.___" refer to the transcript of the sentencing hearing.

Viscomi then stated, "My grounds for withdrawing the plea is when I took the plea, I was scared, that's why I took it. I really didn't understand the full consequences of taking that plea, even though you explained it, I was scared. I figured it would be best but I mean everything on that night, I'm not guilty. Yes, I was there and yes I'm very remorseful for what happened but I didn't murder that young man. That's what I don't understand." S.3-4.

Defense counsel elaborated as follows, "Judge, the confusion in his mind comes from the concept of felony murder. Mr. Viscomi from the beginning has indicated that he didn't strike the victim, and this has been explained to him numerous times, and I believe that there's an honest misconception in Mr. Viscomi's mind as to how he can be guilty if he did not, in fact, strike this young man." S.4. The trial judge responded, "I'm sure that you, as an experienced attorney, you have explained the concept of felony murder to him." *Id.*

After hearing from the prosecutor, the trial court found that there was "no legal basis for withdrawal of the plea," S.6, and accordingly denied Viscomi's motion to withdraw: "The plea was knowingly and intelligently taken. The factual basis for the plea is on the record and does support the plea." S.5. The trial court further noted that "there was an agreement concerning sentence, so there was a benefit to be gained by the defendant." S.5. The judge observed that he had "carefully examined" Viscomi and determined that there was a "knowing, intelligent and voluntary waiver of his rights" and that "[h]is guilt was admitted of the crimes charged in counts one, two, three, four and six of the indictment[.]" S.5-6. Viscomi was sentenced, as promised, to a term of fifteen years to life in prison.

The Appellate Division, Fourth Department, of New York State Supreme Court unanimously affirmed his conviction. *People v. Viscomi*, 286 A.D.2d 886, 730 N.Y.S.2d 748

(App. Div. 4th Dept. 2001). The New York Court of Appeals denied leave to appeal. *People v. Viscomi*, 97 N.Y.2d 763, 769 N.E.2d 370, 742 N.Y.S.2d 624 (N.Y. 2002). This habeas petition followed. For the reasons set forth below, the petition is denied.

## III. Discussion

### A. Standard of Review

Viscomi's habeas corpus petition is governed by 28 U.S.C. § 2254(d) as modified by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214. Title 28, section 2254(d) provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]

28 U.S.C. § 2254(d)(1). A state court decision is "contrary to" clearly established federal law, as determined by the Supreme Court, when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Under the "unreasonable application" clause of 28 U.S.C. § 2254(d)(1), "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413.

### B. Merits of the Petition

#### 1. Ineffective assistance of counsel

Viscomi contends that he was denied the effective assistance of counsel, as guaranteed by the Sixth Amendment of the Constitution, because his attorney allegedly adopted a position adverse to Viscomi's *pro se* motion to withdraw his plea. On direct appeal, the Appellate Division disagreed:

> We reject the contention of defendant that he was denied effective assistance of counsel by the failure of his assigned counsel to support his motion to withdraw his guilty plea. An attorney assigned to represent a defendant in a criminal case has no duty to participate in a baseless *pro se* motion to withdraw a plea of guilty which was voluntarily, knowingly, and intelligently made. Assigned counsel did not argue in opposition to the defendant's motion, become a witness against him, or make any statements which were adverse to him. Rather, counsel attempted to clarify the circumstances surrounding the plea proceedings. The knowing, intelligent and voluntary waiver by defendant of the right to appeal encompasses his contention that Supreme Court erred in accepting his guilty plea without first considering his application for new assigned counsel. In any event, defendant waived final determination of that application by pleading guilty before it was decided. Finally, we conclude that the court did not abuse its discretion in denying the motion of defendant to withdraw his guilty plea. The defendant's belated and unsubstantiated claim of innocence, upon which his motion was based, was belied by his earlier admission of guilt during his plea of guilty[.] The additional contention of defendant that he did not understand the consequences of his plea is refuted by the record of the plea proceedings.

*People v. Viscomi*, 286 A.D.2d at 886-887 (internal quotation marks and citations omitted).

In *Hines v. Miller*, 318 F.3d 157 (2d Cir. 2003), the Second Circuit considered a similar claim to the one raised here by Viscomi. After pleading guilty to second degree murder and related weapons charges, petitioner Hines moved *pro se* to withdraw his plea, stating that "he was innocent and had been coerced into pleading guilty by his attorney." *Id.* at 159. When the case came on for sentencing, Hines's defense counsel declined to comment on his client's allegation that he had been pressured into pleading guilty but asked to be relieved in the event the court allowed withdrawal of the plea. After the prosecutor made a statement opposing the motion, defense counsel noted that he was "'at a great disadvantage to defend the defendant' and

-7-

asked the court to be relieved and to have new counsel appointed to argue the motion on proper papers." *Id.* Rather than address defense counsel's request, the trial court questioned Hines directly, in response to which Hines maintained that he was innocent of the crime and had only pleaded guilty "'out of fear, pressure, extreme pressure.'" *Id.*

On appeal, the state court affirmed Hines's conviction. The district court denied Hines's habeas petition but granted a certificate of appealability on the issues of whether petitioner was constitutionally entitled to an evidentiary hearing on his claims of innocence and whether petitioner had been deprived of the effective assistance of counsel when he moved to withdraw his plea. *See id.* at 162. The district court construed Hines's petition to argue that his "motion to withdraw the plea based on his attorney's coercion created an actual conflict of interest that left him effectively unrepresented." *Id.* (citing *Hines II*, 156 F. Supp.2d at 331).

The Second Circuit focused its AEDPA analysis on whether the state court's decision was reasonable, noting that the state court had held that Hines's claims of innocence and coercion were not supported by the record, that his attorney had not coerced him but simply gave him sound advice as to the strength of his case, that his attorney properly declined to join in the withdrawal motion, and that he had received meaningful representation. *Id.* at 163. The Second Circuit noted that although the Supreme Court had issued "numerous" opinions regarding the various aspects of a defendant's Sixth Amendment right to counsel, *id.* (citing *Strickland v. Washington*, 466 U.S. 668, 684-96 (1984); *Cuyler v. Sullivan*, 446 U.S. 335, 348-49 (1980); *Coleman v. Alabama*, 399 U.S. 1, 7-11 (1970); *Mempa v. Rhay*, 389 U.S. 128, 134-37 (1967); *Gideon v. Wainwright*, 372 U.S. 335, 339-45 (1963)), it had never specifically addressed a claim such as Hines's, nor had it stated how such a claim should be analyzed, *id.* For instance, the

Second Circuit explained, the claim could be treated as alleging that the petitioner was denied his right to counsel because he was "effectively unrepresented" on his motion to withdraw his plea." *Id.* (citing *Coleman*, 399 U.S. at 7-11; *Mempa*, 389 U.S. at 134-37). On the other hand, it could be construed as a claim that the petitioner was denied the effective assistance of counsel because "an actual conflict of interest adversely affected counsel's performance[.]" *Id.* (citing *Cuyler*, 446 U.S. at 348).

The Second Circuit noted that, in the past, it had applied *Strickland*, *Cuyler*, or a similar analysis "to determine whether the defendant received ineffective assistance of counsel," generally deciding the case "on the basis of whether the underlying motion [to withdraw the guilty plea] had sufficient merit to create an actual conflict of interest or present a 'plausible alternative defense strategy.'" *Id.* (citing, *inter alia*, *United States v. Davis*, 239 F.3d 283, 285-88 (2d Cir. 2001); *United States v. Moree*, 220 F.3d 65, 69-72 (2d Cir. 2000); *Fluitt v. Superintendent, Green Haven Corr. Facility*, 480 F. Supp. 81, 85-87 (S.D.N.Y. 1979)). The Second Circuit observed that other circuit courts, in addressing similar facts, instead have viewed the issue as whether the failure to appoint substitute counsel on the motion to withdraw was a violation of the right to counsel. *Id.* (citations omitted). Still other courts, the Second Circuit pointed out, have applied more than one analysis. *Id.* (citations omitted). In light of the "many divergent approaches and outcomes in federal courts that have applied clearly established Supreme Court precedent to the facts at issue," and the "absence of any Supreme Court decision concerning" the type of claim raised by Hines, the Second Circuit found no basis for concluding that the state court's decision denying Hines's motion to withdraw his plea without appointing substitute counsel was "unreasonable." *Id.* at 164.

Respondent argues that, as was the case in *Hines*, there is no basis for concluding that the appellate division's decision in Viscomi's case was an unreasonable application of clearly established Supreme Court precedent. In the alternative, respondent urges that even under a pre-AEDPA standard of review, the conviction should not be disturbed because Viscomi cannot establish that he was deprived of the effective assistance of counsel.

Under the circumstances presented here, the Court agrees that habeas relief is not warranted, regardless of which standard of review is applied. As discussed below, the appellate division's holding that defense counsel was not laboring under a conflict of interest conforms to clearly established Supreme Court precedent. "Because 'sentencing is a critical stage of the criminal proceeding at which [a defendant] is entitled to the effective assistance of counsel,' *Gardner v. Florida*, 430 U.S. 349, 358 (1977), a constitutional violation may occur if a conflict of interest arises after a defendant is convicted but before he is sentenced." *Lopez v. Scully*, 58 F.3d 38, 40 (2d Cir. 1995) (alteration in original).  An actual conflict of interest arises when, during the course of the representation, the attorney's and defendant's interests "diverge with respect to a material factual or legal issue or to a course of action."  *Cuyler v. Sullivan*, 446 U.S. 335, 356 n. 3 (1980) (opinion of Marshall, J.); *accord Lopez*, 58 F.3d at 40.

Neither in his motion nor at the hearing did Viscomi affirmatively represent or imply that defense counsel had coerced him into pleading guilty, which would have given rise to an actual conflict of interest. *See Lopez*, 58 F.3d at 40 ("We agree with the district court that Lopez's trial counsel had an actual conflict of interest at the time Lopez was sentenced. In a *pro se* motion to withdraw his guilty plea, which Lopez had presented to the trial court at the commencement of the sentencing proceeding, Lopez alleged that his attorney had coerced him into pleading guilty.

-10-

At that point, the attorney had an actual conflict of interest: to argue in favor of his client's motion would require admitting serious ethical violations and possibly subject him to liability for malpractice; on the other hand, '[a]ny contention by counsel that defendant's allegations were not true would . . . contradict his client.'") (alteration in original) (quotation omitted). Thus, the facts of Viscomi's case do not match those in *Lopez*. As a consequence, Viscomi cannot meet the first prong of the test, which requires a showing that there was an actual conflict of interest.

Even assuming, *arguendo*, that there existed an actual conflict of interest, Viscomi cannot establish the second prong–that defense counsel's actual conflict "adversely affected" his performance. *United States v. Levy*, 25 F.3d 146, 157 (2d Cir. 1994) (citing *Cuyler*, 446 U.S. at 350). The test, as articulated by the Second Circuit, requires a defendant to demonstrate that some "plausible alternative defense strategy or tactic might have been pursued," and that the "alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." *Id.* (quotation omitted); *accord Lopez*, 58 F.3d at 41. Notably, the term "plausible alternative defense strategy" does not encompass "all possible courses of action open to a defense attorney[.]" *Lopez*, 58 F.3d at 41. Rather, it refers to those which a "zealous advocate" would "reasonably pursue" under the circumstances. *Id.* After reviewing the transcript of the plea allocution and Viscomi's statements to the police, this Court concludes that presentation of Viscomi's motion to withdraw his plea was not a "plausible alternative defense strategy." *See id.*

As respondent points out, Viscomi's conclusory claim of innocence is refuted by the plea colloquy, in which Viscomi admitted that during the course of a robbery in which he affirmatively participated, the victim was beaten on the head by a co-defendant with a piece of

lumber. Viscomi presented nothing in his written motion or when he was questioned by the court to substantiate a claim of actual innocence. Indeed, his claim of innocence appears to be based solely on his contention that he did not inflict the blows to the victim's head that ultimately resulted in the victim's death. As defense counsel noted, Viscomi was charged with felony murder, and Viscomi's admissions during his plea colloquy established that the killing occurred "in the course of and in furtherance of" the attempted robbery.

Viscomi asserts that he "did not execute a written plea agreement nor did he admit to striking the deceased or possessing the weapon used to kill the deceased." Petitioner's Reply Memorandum of Law at 7 (Docket #14). However, these statements do not establish the four elements of the statutory affirmative defense to felony murder.[4] Under such circumstances, felony murder is thus a "strict liability" offense, and the defendant's subjective intent or motive is not relevant. In other words, it is of no moment that Viscomi may not have been directly responsible for issuing the "killing blow" to the victim since, by his own admission, he witnessed his co-defendant beating the victim about the head with a two-by-four. Thus, Viscomi could not establish that he "no reasonable ground to believe" that co-defendant Blanco "intended to engage in conduct likely to result in death or serious physical injury," one of the necessary

---

[4] Under New York law, a defendant is guilty of "felony murder," when "[a]cting either alone or with one or more other persons, he commits or attempts to commit robbery, burglary, kidnapping [sic], arson, rape in the first degree, criminal sexual act in the first degree, sexual abuse in the first degree, aggravated sexual abuse, escape in the first degree, or escape in the second degree, and, in the course of and in furtherance of such crime or of immediate flight therefrom, he, or another participant, if there be any, causes the death of a person other than one of the participants[.]" N.Y. Penal Law § 125.25(3). However, where the defendant was "not the only participant in the underlying crime, it is an affirmative defense that the defendant: (a) [d]id not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; *and* (b) [w]as not armed with a deadly weapon, or any instrument, article or substance readily capable of causing death or serious physical injury and of a sort not ordinarily carried in public places by law-abiding persons; *and* (c) [h]ad no reasonable ground to believe that any other participant was armed with such a weapon, instrument, article or substance; *and* (d) [h]ad no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury[.]" N.Y. Penal Law § 125.25(3)(a)-(c) (emphases added).

elements of the affirmative defense to felony murder. Moreover, he also could not establish that he was not armed with a "deadly weapon, or any instrument, article or substance readily capable of causing death or serious physical injury and of a sort not ordinarily carried in public places by law-abiding persons," N.Y. Penal Law § 125.25(3)(b), as he was in possession of a concealed table leg that he intended to use as a weapon.

Defense counsel's failure to join in Viscomi's unsubstantiated *pro se* motion to withdraw his guilty plea did not give rise to a conflict of interest, and Viscomi was not denied his Sixth Amendment right to effective assistance of counsel. This claim provides no basis for habeas relief.

### 2.     Failure to Conduct Hearing Regarding Petitioner's Request for Substitution of Counsel

Viscomi asserts that the trial court erred in failing to hold a hearing regarding his motion to substitute counsel. It appears that Viscomi signed, before a notary, an affidavit of service that he served a pre-printed motion to substitute counsel on the Chief Clerk of the Courts in Erie County and the Erie County District Attorney's office on May 12, 1998. In this motion to substitute counsel, there were no allegations specific to Viscomi's defense counsel; all Viscomi did was to fill in counsel's name. On May 14, 1998, Viscomi appeared in court with his still-assigned attorney to enter a guilty plea; when questioned, however, he expressed no dissatisfaction with counsel. The motion to substitute counsel was not mentioned at the plea hearing or at the sentencing hearing. It is unclear to this Court when, if ever, the trial court became apprised of the motion to substitute counsel.

In any event, on direct appeal, the appellate division held that Viscomi's "knowing, intelligent and voluntary waiver" of the right to appeal encompassed his contention that the trial

court erred in accepting his guilty plea without first considering his application for new assigned

counsel. The appellate division properly held that Viscomi waived a final determination of the

motion to substitute counsel by pleading guilty before it was decided.

>  As the Supreme Court has held,

>  A guilty plea represents a break in the chain of events which has preceded it in the
>  criminal process. When a criminal defendant has solemnly admitted in open court
>  that he is in fact guilty of the offense with which he is charged, he may not
>  thereafter raise independent claims relating to the deprivation of constitutional
>  rights that occurred prior to the entry of the guilty plea. He may only attack the
>  voluntary and intelligent character of the guilty plea by showing that the advice
>  he received from counsel was not within the standards of governing Supreme
>  Court decision.

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *accord, e.g.*, *Hill v. Lockhart*, 474 U.S. 52, 56

(1985). In other words, a defendant who pleads guilty is limited to challenging the voluntariness

of the plea on the basis that counsel's advice regarding the decision to plead guilty was not

"'within the range of competence demanded of attorneys in criminal cases.'" *Hill*, 474 U.S. at 56

(quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). As respondent points out, the rule

in *Tollett* has been applied by several circuit courts to preclude review claims involving pre-plea

motions to substitute counsel where the alleged ineffectiveness does not relate to the plea

agreement. *See United States v. Foreman*, 329 F.3d 1037, 1038-39 (9th Cir. 2003) ("Without

explanation, Foreman argues that his plea was involuntary because the district court violated his

Sixth Amendment right to effective representation by denying his motion for substitution.

Failure to substitute counsel does not by itself render a plea involuntary. As noted, no facts in the

record suggest that Foreman's plea was involuntary. We conclude that the right to appeal a

pre-plea motion for substitution is waived by an unconditional guilty plea, unless the plea itself

is challenged.").

Here, it is not entirely clear what Viscomi's complaints were concerning trial counsel's performance. The May 12th motion to substitute counsel was titled, "Petition for Reassignment of Counsel When Conflict Exists Between Defendant and the Attorney." *See* Exhibit C to Respondent's Appendix of Exhibits. The motion was a pre-printed form; the only additional information supplied by Viscomi was his name, the attorney's name, the judge's name, and the crimes with which Viscomi was charged. *See id.* The form stated in a conclusory fashion that defense counsel failed to conduct an "appropriate investigating [*sic*]"; failed "to file requested pre-trial motions"; "failed to keep defendant adequately appraised of his pretrial preparation"; failed "to consult with the defendant"; and "failed to conduct any other pretrial investigation." *Id.* When Viscomi appeared in court a few days later, on May 14th, he was questioned about whether his attorney or anyone else had coerced him into deciding to plead guilty. Viscomi answered, "No." P.3. As to the waiver of his right to appeal, defense counsel stated that was "agreed upon by [Viscomi] and also explained to him[.]" P.4. Viscomi did not express any dissatisfaction with counsel's representation during the plea colloquy. *See id.* Furthermore, when the motion to withdraw the plea was discussed in open court, Viscomi did not raise any concerns regarding counsel's performance. *See* S.3. Thus, at the time, Viscomi gave no indication that the motion to withdraw had to do with counsel's advice concerning guilty plea. The appellate division's holding that Viscomi had waived his right to challenge any pre-plea ineffectiveness arguably was not an unreasonable application of clearly established Supreme Court precedent as set forth in *Tollett* and its progeny.

Even assuming that Viscomi's right to challenge the alleged pre-plea ineffectiveness of his defense counsel was not waived by his voluntary guilty plea or his voluntary waiver of

appellate rights, the trial court did not commit reversible error by failing to hold a hearing and by failing to appoint substitute counsel. The purpose of the Sixth Amendment is to guarantee the defendant a fair trial, though not necessarily a perfect one. *Strickland v. Washington*, 466 U.S. 668, 689 (1984). Thus, the focus of the Sixth Amendment's protection is "the adversarial process, not . . . the accused's relationship with his lawyer as such." *United States v. Cronic*, 466 U.S. 648, 657 n. 21 (1984). A defendant does not have a constitutional right to a "meaningful attorney-client relationship," to be completely satisfied with counsel's performance, or to be represented by the lawyer of his choice. *See Morris v. Slappy*, 461 U.S. 1, 12-15 (1983). The court presiding over a defendant's trial need only ensure that the defendant has an "effective advocate." *Wheat v. United States*, 486 U.S. 153, 160 (1988).

The Second Circuit has "recognized that certain restraints must be put on the reassignment of counsel lest the right be 'manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice.'" *McKee v. Harris*, 649 F.2d 927, 931 (2d Cir. 1981) (quoting *United States v. Bentvena*, 319 F.2d 916, 936 (2d Cir.), *cert. denied*, 375 U.S. 940 (1963)), *cert. denied*, 456 U.S. 917 (1982)). "Where a defendant voices a seemingly substantial complaint about counsel, the court should inquire into the reasons for dissatisfaction." *McKee*, 649 F.2d at 933 (quotation marks omitted); *accord Norde v. Keane*, 294 F.3d 401, 412 (2d Cir. 2002). The Second Circuit has explained that even when a trial court errs in failing to conduct a formal inquiry, the claim is subject to harmless error review. *See id.*; *accord Norde*, 294 F.3d at 412 (stating that in order to succeed on this type of Sixth Amendment claim, a petitioner "must demonstrate that he was harmed by the trial judge's failure to inquire" into his reasons for requesting substitute counsel).

Now, on habeas review, Viscomi still has not articulated what counsel's alleged deficiencies were. Construing Viscomi's *pro se* submissions liberally, the most that the Court can glean from them is that Viscomi might believe that defense counsel did not adequately explain the concept of felony murder to him. *See* Petitioner's Reply Memorandum of Law at 10 ("Petitioner can also demonstrate that he was harmed by the trial judge's failure to inquire. When attorney Molloy spoke about "confusion," and "misconceptions" surrounding petitioner's guilt to second degree murder . . . , the trial judge should have inquired into petitioner's belief as to his understanding of the charges as explained by trial counsel.") (Docket #14). In fact, both Viscomi and defense counsel placed on the record what the misunderstanding was–namely, Viscomi apparently did not believe that he could be guilty of murder since he allegedly did not actually strike the victim. *See* S.4. Defense counsel informed the court that Viscomi was confused about the concept of felony murder, although it had been explained to Viscomi "numerous times." *Id.* It is apparent to this Court that defense counsel clearly understood the concept of felony murder since he made the well-reasoned decision to advise Viscomi to plead guilty; all of the elements of felony murder were present in Viscomi's inculpatory statement to the police, while the elements of the affirmative defense to felony murder were lacking. On the facts presented here, then, counsel clearly was not ineffective in recommending that his client plead guilty to felony murder in return for a ten-year reduction in his minimum sentence.

The Court fails to see how appointing new counsel would have made any difference in the outcome of the case; any reasonably experienced attorney would have counseled Viscomi in the same way that defense counsel, in fact, did advise Viscomi regarding the decision to plead guilty.  Thus, Viscomi cannot show that he was harmed by the trial court's failure to conduct an

inquiry into his boilerplate motion to substitute counsel. This claim accordingly provides no basis for habeas relief.

### 3. Failure to hold hearing regarding motion to withdraw plea

Finally, Viscomi contends that the trial court erred in denying his motion to withdraw his plea without an evidentiary hearing. Contrary to Viscomi's contention, the court did afford Viscomi a chance to be heard prior to issuing its decision to deny the withdrawal motion. Viscomi appears to allege that this was inadequate because the court failed to follow through with additional questions concerning his actual level of participation in the offense charged. *See* Petitioner's Appellate Brief, Respondent's Appendix of Exhibits.  In his habeas petition, Viscomi also alleges that the plea allocation was deficient since it contained no "*mens rea*" admission to the element of murder in the second degree, "Eg. [*sic*] Denial of striking victim with two by four." Petitioner's Reply Memorandum of Law at 14 (Docket #14). As discussed above, Viscomi was pleading guilty to felony murder. This crime does not have a *mens rea* component of "intent to kill." *See*, *e.g.*, *People v. Langlois*, 17 A.D.3d 772, 792 N.Y.S.2d 713 (App. Div. 3d Dept. 2005) ("[F]elony murder is a strict liability offense requiring no *mens rea*[.]") (citing *People v. Curry*, 294 A.D.2d 608, 741 N.Y.S.2d 324 (App. Div. 3d Dept. 2002) ("A murder committed during the commission of a designated felony does not require proof of intent to commit the murder. The intent necessary to sustain such conviction arises from that necessary to commit the underlying felony[.]") (citing *People Stokes*, 88 N.Y.2d 618, 623, 671 N.E.2d 1260, 648 N.Y.S.2d 863 (N.Y. 1996) ("Felony murder differs from other homicides in that it does not require a *mens rea* directly relating to the death. Instead, by operation of law, the intent necessary to sustain a murder conviction is inferred from the intent to commit a specific,

serious, felonious act, even though the defendant, in truth, may not have intended to kill.") (quotation marks and citations omitted).

Viscomi also complains that the trial court failed to explain the "legal concepts governing murder in the second degree or the theory of accessorial liability." Viscomi was not indicted on a theory of accessorial liability under New York Penal Law § 20.00; this was unnecessary since he admitted to participating in the robbery which was the designated felony giving rise to the charge of felony murder. The Court agrees that the trial court's plea colloquy was somewhat perfunctory and that it would have been better practice for the trial court to have obtained more detailed admissions from Viscomi regarding his participation in the attempted robbery and beating. However, the factual allocution placed on the record was adequate to support the guilty plea, and the trial court was not required to place the allegedly omitted explanations on the record.

Finally, Viscomi was not entitled, as a matter of federal constitutional law, to a full evidentiary hearing on his motion to withdraw. *See Hines v. Miller*, 318 F.3d at 162 ("Both federal and state precedent have established that a defendant is not entitled as a matter of right to an evidentiary hearing on a motion to withdraw a guilty plea. . . [T]he failure to hold an evidentiary hearing on a motion to withdraw a plea does not offend a deeply rooted or 'fundamental' principle of justice.") (citations omitted). Here, the appellate division held that the trial court did not abuse its discretion in denying Viscomi's motion to withdraw his guilty plea since Viscomi's "belated and unsubstantiated claim of innocence . . . was belied by his earlier admission of guilt during his plea of guilty," which was knowingly, voluntarily and intelligently made. In light of *Hines* and the precedents discussed therein, the holding in Viscomi's case was not an unreasonable application of clearly established federal law so as to warrant habeas relief.

-19-

*See Hines*, 318 F.3d at 162 (affirming district court's denial of habeas petition based on failure to hold a evidentiary hearing on a motion to withdraw a guilty plea where petitioner made a voluntary plea and failed to substantiate his claims of coercion and innocence).

## IV.    Conclusion

For the reasons stated above, petitioner Anthony Viscomi's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed.  Because petitioner has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2253.

**IT IS SO ORDERED**

/s/ *Victor E. Bianchini*

_____
VICTOR E. BIANCHINI
United States Magistrate Judge

DATED:        July 12, 2006
              Buffalo, New York.